

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: August 22, 2025.**

_____
**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| PREMIER DATACOM, INC. | ) | Case No. 25-10097 |
| | ) | |
| Debtor. | ) | CHAPTER 11, Subchapter V |
| | ) | |

### ORDER CONFIRMING DEBTORS'
### PLAN OF REORGANIZATION UNDER 11 U.S.C. § 1191(b)

On August 14, 2025, the Court held a hearing (the "Confirmation Hearing") to consider

confirmation of the *Subchapter V Debtor's Amended Plan Dated June 30, 2025* (the "Plan")[1] filed

herein by Premier Datacom, Inc. (the "Debtor") on July 1, 2025 [Docket No. 177].  Present or

making appearances at the hearing were counsel for the Debtor, the Debtor's representatives,

Glenn Ryan Willis, President and Jordan Berger, Interim, Chief Financial Officer, the

---

[1] Capitalized terms used herein without definition shall have the meanings provided for in the Plan. In addition, any term used in the Plan or this Order that is not defined in the Plan or this Order, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.

Subchapter V Trustee, Todd Headden, appointed in the case (hereinafter "Sub V Trustee"), counsel for certain creditors who have entered an appearance in the case, and the United States Trustee.  The Court has reviewed the Plan, considered the documents admitted into evidence and the testimony of witnesses present at the hearing, considered the statements and arguments of counsel, the docket of the Bankruptcy Case, and considered any other relevant factors affecting the case as set forth on the record.

**Based upon the foregoing, the Court finds and determines as follows:**

A.      The Debtor filed this case on January 24, 2025 (the "Petition Date"), and was qualified to be a Debtor under 11 U.S.C. § 109. The Debtor was also qualified and elected to proceed as a small business debtor under Subchapter V of the Bankruptcy Code as that term is defined by 11 U.S.C. § 1182(1).

B.      This Court has jurisdiction over the case pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (L) and (O), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and whether it should be confirmed. Venue in the Western District of Texas was proper on the Petition Date and continues to be proper under 28 U.S.C. §§ 1408 and 1409.

C.      Every person or entity required to receive notice of the hearing on confirmation of the Plan, as well as the Plan voting and Plan objection deadlines set by the Court, received timely and adequate notice as required by the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 2002 and 9014 and the Bankruptcy Code.

D.      The contents of the Plan (with any modifications as set forth below) satisfy the applicable requirements of 11 U.S.C. § 1190 and any other applicable requirements of the Bankruptcy Code.

E.     The Plan (with any modifications as set forth below) and the Debtor have satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1129(a), except for 11 U.S.C. § 1129(a)(8) and/or 1129(a)(10). Thus, the Plan cannot be confirmed under 11 U.S.C. § 1191(a). However, the Plan can and should be confirmed under 11 U.S.C. § 1191(b), as the Plan (with any modifications as set forth below) does not discriminate unfairly and is fair and equitable with respect to each impaired class of claims and interests that have not accepted the Plan as required by 11 U.S.C. § 1191(c).

F.     The Plan (with any modifications as set forth below) and the Debtor have satisfied all other requirements of the Bankruptcy Code and Bankruptcy Rules necessary to confirm the Plan.

G.     The Court specifically finds that there is cause under 11 U.S.C. § 1194(b) for the Debtor to serve as the Disbursing Agent under the Plan.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AS FOLLOWS:**

1.     The Subchapter V Debtor's Amended Plan Dated June 30, 2025 filed by the Debtor on July 1, 2025 [Docket No. 177] and attached hereto as **Exhibit A**, is hereby **CONFIRMED** and approved in each and every respect as a nonconsensual plan pursuant to 11 U.S.C. § 1191(b), with the modifications set forth below. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

2.     To the extent any objections to confirmation of the Plan have not been resolved or withdrawn, any such objections are hereby denied.

3.     The effective date of the Plan shall be August 22, 2025 ("Effective Date"), notwithstanding anything to the contrary in the Plan.

4.      In the event of a conflict between provisions of the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

5.      Within three (3) days following the Effective Date, the Debtor shall serve notice of (i) entry of this Confirmation Order; (ii) the occurrence of the Effective Date; and (iii) any bar dates and any other deadlines set by the Plan ("Notice"), pursuant to Bankruptcy Rule 3020(c). The Notice shall be sent to all creditors and parties-in-interest by first class mail, postage prepaid. The Debtor shall thereafter promptly file a copy of such Notice with proof of mailing with the Court.

6.      The provisions of the Plan, and any documents executed in conjunction with the Plan, and this Confirmation Order are, as of the Effective Date, effective and binding on the Debtor, all creditors of the Debtor, and any other parties-in-interest, as well as their respective heirs, successors, assigns, or other persons claiming through them. The failure to specifically describe or include any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety subject to the modifications set forth herein. Each provision of the Plan shall be deemed authorized and approved by this Confirmation Order, subject to the modifications set forth herein, and shall have the same binding effect of every other provision in the Plan, whether or not mentioned in this Confirmation Order.

7.      The Debtor shall make the payments to creditors required by the Plan under 11 U.S.C. § 1194(b). Except as set forth in the Plan or this Confirmation Order, the Debtor shall make all required General Unsecured Claim plan payments before the fifteenth (15th) day of each year beginning on September 1, 2026, and all other required plan payments before the fifteenth (15th) day of each month beginning on September 1, 2025. The Debtor will distribute plan

payments in accordance with the terms of this Order and the Plan until all required payments have been made. If the Debtor fails to make all required plan payments to creditors by the deadline, the Debtor and Debtor's counsel shall, or any affected creditor may, file a notice of default with the Court ("Plan Default"). The Debtor shall have seven (7) days to cure any such Plan Default. Upon an uncured default by the Debtor or the Reorganized Debtor under this Plan, the party asserting the occurrence of such uncured default shall be permitted to seek relief and request any available remedies for such uncured default under the Bankruptcy Code.

8.      The Debtor shall file a report six (6) months following the Effective Date and every six (6) months thereafter detailing payments made by the Debtor and disbursements made under the Plan.

9.      Within fourteen (14) days of entry of this Order, the Debtor shall provide the Sub V Trustee with a list of allowed claims, associated account numbers and the amount of such claims. If there are any disputed claims, the Debtor shall provide a separate list of such disputed claims and an estimated date of resolution. The Debtor shall file a certificate of service indicating that the claim information required by this paragraph has been timely served on the Sub V Trustee.

10.      Except as otherwise provided in the Plan, no distributions will be made with respect to a disputed claim until the resolution of such dispute by settlement or final order. The provisions of this section are not intended to restrict payment of any allowed claims which are not disputed. Until a disputed claim is resolved, the Debtor shall hold any portion of plan payments that would be disbursed to the claimant if the claim were allowed in full, subject to a final resolution of the disputed claim. Upon resolution in favor of the allowed claim, the Debtor will distribute withheld funds to the claimant within the next payment period. If the disputed claim is disallowed, the

Debtor will make withheld funds available to allowed claim holders in accordance with the terms of the Plan within the next payment period.

11.    Disbursements may be delivered by the Debtor to (i) the address list provided by the Debtor under paragraph 8; (ii) the address for payment set forth on a proof of claim filed by the claimant or its authorized agent; or (iii) at the address set forth in any written notices of change of address filed on the Court's docket for this case. If any distribution to a claimant of an allowed unsecured claim is returned to the Debtor as undeliverable, no further distributions shall be made to such claimant unless and until the Debtor is notified in writing of such claimant's correct mailing address, at which time all currently due distributions shall be made to such claimant as soon as practicable. Undeliverable distributions shall remain in the possession of the Debtor until such time as a distribution becomes deliverable and shall not be supplemented with any interest, dividends, or other accruals of any kind.

12.    The Sub V Trustee shall file all reports required by 11 U.S.C. §§ 1183(b)(1) and 704(a)(9) in the manner prescribed by the United States Trustee Program. Upon the completion of the Plan, the Trustee shall file his final report and seek a discharge of his duties as Sub V Trustee.

13.    The Sub V Trustee shall be compensated for his post-confirmation duties at his approved hourly rate. The Sub V Trustee may file a notice setting forth post-confirmation fees and expenses on a quarterly basis with the Court. All parties in interest will have fourteen (14) days after the notice is filed to object to the Sub V Trustee fees and expenses disclosed therein. If no objection is received, the Debtor shall pay the Sub V Trustee without further order of the Court.

14.    The Sub V Trustee shall file a post-confirmation final fee application within ninety (90) days of the notice of completion of plan payments. The final fee application shall include all

compensation received and disclosed in the quarterly post-confirmation notices filed with the Court.

15.     The Debtor and its respective agents and attorneys are hereby authorized, empowered, and directed to carry out the provisions of the Plan and to perform the acts and execute and deliver the documents as are necessary or appropriate in connection with the Plan and this Order.

16.     Nothing in this Confirmation Order or the Plan shall in any way operate to, or have the effect of, impairing or extinguishing in any respect any causes of action disclosed on Debtor's schedules or arising under chapter 5 of the Bankruptcy Code or any other claims or defenses owned by the Debtor on the Effective Date, and the Debtor shall retain such claims as provided in the Plan, including any claims or defenses that may not have been defined in the Plan but are nonetheless owned by the Debtor on or before the Effective Date. After the Effective Date, the Debtor may, in accordance with the terms of the Plan, evaluate and determine whether to pursue any such retained claims.

17.     Except as otherwise expressly provided in the Plan, all payments and other distributions to be made under the Plan shall be timely and proper if (i) the payment is made directly to the creditor in a manner agreed to by the Debtor and the applicable creditor, (ii) mailed by first class mail on or before the date of distribution provided for in the Plan or this Confirmation Order to the address listed in the creditor's proof of claim filed in this case, (iii) or, if no proof of claim is filed, to the creditor's last known mailing address.

18.     Pursuant to 11 U.S.C. § 1192, within thirty (30) days of the filing of the Sub V Trustee's NDR or TFR, the Debtor shall file a motion for entry of the discharge order. In the motion for entry of discharge, the Debtor shall certify that (1) all payments required under the

confirmed plan have been made, (2) all administrative expenses, including the approved fees and expenses of the Subchapter V Trustee have been paid in full, and (3) that the Debtor is entitled to entry of discharge.

19.     The Debtor and all holders of Claims and Interests are bound by the Plan within the meaning of 11 U.S.C. § 1141.

20.     The Court shall retain jurisdiction of this case for all purposes provided in 11 U.S.C. §§ 1193 and 1142, and Bankruptcy Rule 3020(d).

21.     All property of the estate shall remain vested in the estate until the Debtor completes all the payments under the Plan and a discharge is entered herein. In addition, property of the estate shall include all property identified in 11 U.S.C. § 1186.

22.     This Confirmation Order is a final order and effective and enforceable immediately upon entry and the period in which an appeal must be filed shall commence upon the entry hereof.

23.     The following Nonmaterial Plan Modifications are hereby approved:

### Nonmaterial Plan Modifications

### Retention of Certain Priority Tax Liens:

Travis County Tax Assessor-Collector for and on behalf of itself and the other local government entities for which it collects taxes (collectively, "Travis County") filed Claim No. 11 on March 6, 2025. Travis County is a secured creditor for 2024 and estimated 2025 ad valorem taxes assessed against Debtor's Commercial Personal Property. Travis County's tax liens are retained and unaffected by the Plan until Travis County's claim is paid in full.

Upon final determination of the estimated 2025 ad valorem taxes, Travis County's claim shall be paid both post-petition pre-effective date interest and post-effective date interest at the rate of 1% per month and 12% per annum, respectively. Travis County's claim for 2024 ad valorem

taxes will be paid in full in cash within 90 days of the Plan Effective Date, and Travis County's

claim for 2025 ad valorem taxes (once final) will be paid timely in accordance with state law.

**Five Star Bank:**

All loan documents attached to the FIVE STAR BANK Proof of Claim, including all loan

documents executed in connection therewith, whether referenced in the FIVE STAR BANK Proof

of Claim or not, including guarantees, are collectively referred to herein as the "FIVE STAR

BANK Loan Documents."  FIVE STAR BANK shall be secured on all collateral described in the

FIVE STAR BANK Loan Documents up to the value of the collateral ("FIVE STAR BANK

Collateral").  The FIVE STAR BANK Loan Documents shall remain in full force and effect except

as expressly modified under this Plan. Notwithstanding anything in this Plan to the contrary, all

rights and remedies of FIVE STAR BANK under the FIVE STAR BANK Loan Documents shall

control in the event of a default by Debtor in connection with failure to make a payment to FIVE

STAR BANK under this Plan or failure of Debtor to comply with any other provision of the FIVE

STAR BANK Loan Documents, including, but not limited to, rights of acceleration (without notice

to cure of any kind which has been waived), all rights of foreclosure of the FIVE STAR BANK

Collateral.  Notwithstanding anything in this Plan to the contrary, nothing under this Plan shall

release, modify, or otherwise affect the liability under the FIVE STAR BANK Loan Documents

by any non-Debtor guarantor or borrower, including Charles E. Brooks. The security interest and

liens allowed, described in, or granted to FIVE STAR BANK under the Plan and Order Confirming

Plan shall constitute valid and duly perfected security interests and liens and both the Order

Confirming Plan and the Plan shall be sufficient and conclusive evidence of the priority, perfection

and validity of all of the security interests and liens upon the FIVE STAR BANK Collateral.  FIVE

STAR BANK shall not be required to file, record or serve any financing statements, mortgages,

notice or other documents which may otherwise be required under federal or state law in any jurisdiction or to take any other action (including the taking of possession) to validate or perfect such post-petition security interest and liens.

**Toyota:**

Toyota Financial Service's claims will be paid in full with an interest rate of prime plus one percent (equivalent to 8.5% as of the time of this filing) with payments scheduled to resume twelve (12) months after the Plan Effective Date.

**BayFirst:**

Notwithstanding anything contained in the Plan or Confirmation Order to the contrary, including paragraph 2.2A of the Plan, the Allowed Class 1 Secured Claim of BayFirst National Bank shall receive the following treatment:

Allowed Secured Claim of BayFirst National Bank totaling $109,412.42 ("BayFirst's Claim"), which includes all principal, fees (including attorney fees), costs, and charges as part of BayFirst's Claim pursuant to 11 U.S.C. § 506(b), but excluding post-petition interest which shall be paid as provided below, shall be paid in full, with interest at the non-default variable contract rate of interest as set forth in the parties' pre-petition loan agreement (currently 10.25% per annum as of the Effective Date).

BayFirst's Claim as set forth above shall be paid as follows:

i.  Interest Current: One (1) payment on the Effective Date of August 22, 2025 $3,460.33, which equals all accrued but unpaid interest due on BayFirst's Claim as of the Effective Date;

ii. Interest Only: Monthly payments of all accrued interest on BayFirst's Claim with the first of such installments due on September 15, 2025, and continuing each succeeding calendar month until August 15, 2026 (the "Amortization Date").

iii.   Principal and Interest. After the Amortization Date, payment of all unpaid principal and accrued, unpaid interest shall be due and payable in equal monthly installments[2] of $2,788.14 with the first of such installments due on September 15, 2026, and continuing each succeeding calendar month until August 15, 2030 (the "Maturity Date").

iv.   Final Payment. On the Maturity Date, the entire remaining amount of BayFirst's Claim, including all principal and accrued, but unpaid interest and fees, shall be due and payable to BayFirst National Bank.

Nothing contained in the Plan or Confirmation Order enjoins collection actions against co-debtors or guarantors that are liable on any debts with the Debtor, including, without limitation, Charles E. Brooks.

Notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, Debtor shall remain in possession of all property of the estate subject to existing liens.

Notwithstanding anything contained in the Plan or this Confirmation Order to the contrary, Section 6.1 of the Plan is amended, in part, as follows: (i) a default by the Reorganized Debtor under the Plan includes the failure to make any monetary payment called for under the Plan or any non-monetary covenant set forth in the parties' pre-petition loan documents, including, without limitation, the failure to pay ad valorem taxes on or to insure collateral, (ii) the Reorganized Debtor's obligation to cure any such default should begin thirty (30) days after the date notice of default is mailed not when it is received by the Reorganized Debtor, and (iii) only if a party is found to be in contempt under the Plan (not default), such party shall pay the fees and costs set forth in said Section.

---

[2]   Subject to an adjustment in the installment amount caused by a change in the interest rate under the parties pre-petition loan agreement.

**<u>Jessica Rest:</u>**

Pursuant to section 1191(e), the administrative claim held by Ms. Rest in the amount of $60,379.06 shall be paid on the earlier of (i) a refinancing event of the Sundara DDTL DIP Loan or (ii) in eight (8) equal quarterly installments with the first such payment due on or before the first day of the month that is twelve (12) months following entry of this Order- *pari passu* with the payment of Debtor's counsel.

**<u>Jackson Walker:</u>**

Pursuant to section 1191(e), any allowed administrative claim held by Jackson Walker LLP in the amount of $250,000 shall be paid in eight (8) equal quarterly installments with the first such payment due on or before the first day of the month that is twelve (12) months following entry of this Order- *pari passu* with the payment of Ms. Rest's claim.

### ###

ORDER PREPARED AND SUBMITTED BY:

**JACKSON WALKER LLP**
Jennifer F. Wertz (TX Bar No. 24072822)
Victoria N. Argeroplos (TX Bar No. 24105799)
Beau H. Butler (TX Bar No. 24132535)
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone:     (512) 236-2000
Email: jwertz@jw.com
Email: vargeroplos@jw.com
Email: bbutler@jw.com

***Counsel to the Subchapter V Debtor***

*Solicitation Version*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| PREMIER DATACOM, INC. | ) | Case No. 25-10097 (SMR) |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |

## SUBCHAPTER V DEBTOR'S AMENDED PLAN DATED JUNE 30, 2025

This is the amended plan of reorganization ("Plan") in the chapter 11, subchapter V case of Premier Datacom Inc. (the "Debtor"). This Plan is an amended version of the Debtor's Original Subchapter V Plan of reorganization filed on April 25, 2025 [Docket No. 108] (the "Original Plan"). You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. You may wish to consult an attorney about your rights and your treatment under the Plan.

## NONSTANDARD PROVISIONS

X     If this box is checked, the Plan contains nonstandard provisions in Article 6.

## SUMMARY OF PLAN AND DISTRIBUTION TO CREDITORS

As laid out more fully herein and as reflected in the Debtor's *Net Disposable Income and Liquidation Analysis* attached hereto as **Exhibit A** (the "Plan Projections"), the Plan proposes to pay the Debtor's first and second place secured lenders (Bayfirst National Bank and Five Star Bank, respectively) in full with interest over five (5) years following the Effective Date. All other classified claims, other than General Unsecured Claims, will be paid in full without interest within five (5) years of the Effective Date. The Plan further proposes that General Unsecured Claims will be paid a pro rata distribution of the Debtor's projected net disposable income for the 5 years following the Effective Date.

## ARTICLE I.
## RELEVANT BACKGROUND AND FINANCIAL INFORMATION FOR DEBTOR

X     If this box is checked, this Article is impacted by a nonstandard provision.

### 1.1     Nature of the Debtor's Business.

The Debtor is a technology construction services company specializing in low voltage cabling systems and infrastructure and security systems. The Debtor offers a wide range of technology construction services in Texas including system design, installation, and maintenance of fiber optic cabling, access control, structured data cabling, security cameras, and cellular Distributed

Antenna Systems (DAS) and Emergency Responder Radio Communication Systems (ERRCS). The Debtor has been operating in the Central Texas area since 2005.

### 1.2 Legal Structure and Ownership.

Prior to the Petition Date, the Debtor was incorporated as a corporation in the State of Texas, and was wholly owned by its President, Mr. Glenn Ryan Willis. Since the Petition Date, the Debtor has entered into certain Post Petition Financing and an Equity Transaction (as those terms are defined in the *Debtor's Amended Motion for Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Post-Petition Financing (II) Scheduling a Final Hearing and (III) Granting Related Relief* [Docket No. 135]) resulting in a new equity structure comprised of PDC Holdco Inc. as a 25% owner and Sundara Partners Fund, I, LP, as a 75% owner. Mr. Willis is the sole owner of PDC Holdco Inc. The Debtor further underwent a "F-Reorganization" and was converted into an LLC.



### 1.3 Events Leading to the Filing of the Bankruptcy Case.

Prior to the Petition Date, the Debtor was facing increasingly hostile demands from certain lenders that were parties to certain Merchant Cash Advances Agreements (the "MCA Parties"). In addition to charging the Debtor significant amounts of money in interest and penalties, the MCA Parties had begun contacting the Debtor's customers to, among other things, instruct them to

forward all future payments to the MCA Parties rather than the Debtor, essentially cutting off the Debtor's cash flow and severely disrupting the Debtor's business.

Negotiations with the MCA Parties proved unproductive, resulting in the Debtor, as well as certain of its clients, receiving threats of litigation. Ultimately, the Debtor was forced to file this bankruptcy case to preserve value and to prevent any immediate misdirection of funds the week of its next payroll.

## 1.4    Filing of the Debtor's Chapter 11 Case.

On the Petition Date, the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code ("Code") in the Bankruptcy Court in the Western District of Texas. The Debtor's amended Schedules of Assets and Liabilities are filed at Docket No. 98, and the Debtor's Statement of Financial Affairs is filed at Docket No. 54.

## 1.5    Liquidation Analysis.

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to the Plan as **Exhibit A.**

## 1.6    Feasibility Analysis.

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.  The Debtor has provided projected financial information as **Exhibit A**.  Based on the Plan projections, the Debtor's disposable income, as that term is defined by 11 U.S.C. § 1191(d), to be committed to the payment of claims for the period described in 11 U.S.C. § 1191(c)(2) is $38,419.

## 1.7    Avoidable Transfers.

The Debtor has identified at least $2,200,000 in potential chapter 5 causes of action that may be the basis for recovery lawsuits.  The results of litigation cannot be predicted with certainty and it is possible that other causes of action may be identified.

By way of further information, the Debtor has identified certain pre-petition transfers made to certain parties that could qualify as insiders, as defined by 11 USC § 101(31) (or under applicable case law), of the Debtor, including the MCA Parties.

Confirmation of the Plan effects no settlement, compromise, waiver or release of any claim, cause of action, right of action or claim for relief unless the Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Claim, cause of action, right of action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such claim, cause of action, right of action or claim for relief.

The Debtor reserves any and all Claims and rights against any and all third parties, whether such Claims and rights rose before, on or after the Petition Date, the Confirmation Date, and/or the Effective Date, including, without limitation, any and all causes of action, rights of action and/or Claims for relief that the Debtor or the Reorganized Debtor may have against (i) any insurer and/or insurance policies in which either the Debtor and/or its current or former personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers; or (ii) any recipient of a transfer by the Debtor occurring either before or during this chapter 11 case, including any MCA Party. The entry of the Confirmation Order shall not constitute res judicata or otherwise bar, estop or inhibit any actions by the Debtor or the Reorganized Debtor relating to any Claims, causes of action or rights of action referred to in this Plan, exhibit to this Plan, or otherwise. The Debtor or the Reorganized Debtor shall constitute the representative of the estate for purposes of retaining, asserting and/or enforcing rights of action under § 1123(b)(3)(B) of the Code. On the Effective Date, the Reorganized Debtor shall be substituted as a party of record in all pending litigation brought by or against the Debtor without need for further order of the Bankruptcy Court.

## ARTICLE II.  **THE PLAN**

X       If this box is checked, this Article is impacted by a nonstandard provision.

This Plan of Reorganization (the "<u>Plan</u>") under chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtor from future income of the Debtor's business and cash on hand. Treatment of Claims is determined in accordance with the treatment of Claims in each Class. Claims have been classified below in accordance with § 1122 of the Code.

Only Creditors in Classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A Creditor who holds a Disputed Claim is not entitled to vote on the Plan. A Class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan.  Also, a Class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the Allowed Equity Interest holders that actually vote, vote in favor of the Plan.

A Class that is not impaired is deemed to accept the Plan.

### 2.1    <u>Unclassified Claims.</u>

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code.  For example, Administrative Expenses and Priority Tax Claims are not classified.  They are not considered impaired, and holders of such Claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan does not place the following Claims in any Class:

A.     **Administrative Expenses**

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense.  Any holder of an Allowed Administrative Claim that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order.  If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

The following chart lists the Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan. The amounts below are estimated to the best of the Debtor's knowledge and belief at this time. The Debtor reserves all rights to amend, modify, or object to the amounts below, upon further investigation and reconciliation.

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Subchapter V Trustee | $1,250/month | Payment in full in cash will continue until occurrence of the Plan Effective Date. |
| Texas Comptroller – Sales Tax | $0 | Payment through the Plan in full in cash as soon as reasonably practicable after the occurrence of the Plan Effective Date if already due; or in the ordinary course of the Debtor's business. |
| Vendor Administrative Claim (estimated) | $145,385.72 | Payment through the Plan in full in cash through payments over three years beginning one year after the Effective Date; or in the ordinary course of the Debtor's business. |
| Professional Fee Claims (estimated) | $250,000 | Upon entry of a Court order granting any interim or final fee application, the Disbursing Agent shall make pro rata distributions in cash on a monthly basis until paid in full or as otherwise agreed by the Debtor and the holder of an Allowed Professional Fee Claim. |
| Jess Rest, funding for the Debtor | $60,379.06 | Upon entry of a Court order granting the *Agreed Motion to Allow Administrative Expense Claim of Jessica Rest* [Docket No. 172], Payment through the Plan in full in |

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| | | cash through payments over three years beginning one year after the Effective Date or as otherwise agreed by the Debtor and the holder of an Allowed Other Administrative Claim. |
| Other Administrative Claim (estimated)<br><br>Ryan Willis, purchases made on personal credit card for the benefit of the Debtor.<br><br>Riley Willis, purchases made on personal credit card for the benefit of the Debtor.<br><br>Chuck Brooks, purchases made on personal credit card for the benefit of the Debtor. | $12,375.16 | Payment through the Plan in full in cash through payments over three years beginning one year after the Effective Date or as otherwise agreed by the Debtor and the holder of an Allowed other Administrative Claim. |
| | | |
| TOTAL (estimated) | $476,265.00 | |

### B.    Priority Tax Claims.

Priority Tax Claims are unsecured income, employment, and other taxes described by 11 U.S.C. § 507(a)(8). Unless the Holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in the regular installments paid over a period not exceeding five years from the order of relief.

Each Holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| Internal Revenue Service | $3,642.43 | Estimated. | Once final amount due, if any, is assessed by the Taxing Authority, to be paid in full in cash as soon as reasonably practicable after the |

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| | | | occurrence of the Plan Effective Date if already due; or in the ordinary course of the Debtor's business. Penalties in the amount of $1,000.00 to be classified and treated as a General Unsecured Claim. |
| Travis County-Personal Property Tax | $5,495.09 | March 5, 2025 | Paid in full in cash as soon as reasonably practicable after the occurrence of the Plan Effective Date if already due; or in the ordinary course of the Debtor's business. |
| Travis County-Personal Property Tax | $5,041.37 | Estimated. | Once final amount due, if any, is assessed by the Taxing Authority, to be paid in full in cash in the ordinary course of the Debtor's business. |
| Texas Comptroller of Public Accounts | $9,367.68 | Estimated. | Once final amount due, if any, is assessed by the Taxing Authority, to be paid in full in cash in the ordinary course of the Debtor's business. |

**2.2**     <u>**Classes of Claims and Equity Interests.**</u>

The following are the classes of Claims set forth in the Plan, and the proposed treatment that they will receive under the Plan.

      **A.**      **Classes of Secured Claims**

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under 11 U.S.C. § 506. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a General Unsecured Claim. In addition, certain Claims secured only by the Debtor's principal residence, may require different treatment pursuant to 11 U.S.C. § 1190(3) as set forth below, if applicable:

The following chart lists all Classes containing the Debtor's secured prepetition Claims and the proposed treatment under the Plan:

| Class# | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured Claim of:* Bayfirst Bank<br><br>Collateral Description: All assets.<br><br>Asserted Secured Amount: $105,258.38<br><br>Proof of Claim No. 17 | No | Impaired | Allowed Secured Claim will be paid in full, with interest of 7.50% per annum, paid in monthly installments of $2,545.03, beginning one year after the Effective Date and continuing on or before the 10th day of each month for four (4) years, and such Holder shall retain its lien securing such Allowed Secured Claim. |
| 2 | *Secured Claim of:* Five Star Bank<br><br>Collateral Description: All Inventory, Chattel Paper, Accounts, Equipment, Deposit Accounts, | No | Impaired | Allowed Secured Claim will be paid in full, with interest of 9.00% per annum, paid in monthly installments of $5,196.07, beginning one year |

| Class# | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
|  | Instruments, and General Intangibles.<br><br>Asserted Secured Amount: $208,803.12<br><br>Proof of Claim No. 15 |  |  | after the Effective Date and continuing on or before the 10th day of each month for four (4) years, and such Holder shall retain its lien securing such Allowed Secured Claim. |
| 3 | *Secured Claim of:* Small Business Administration<br><br>Collateral Description: All assets.<br><br>Asserted Secured Amount: $156,418.66<br><br>Proof of Claim No. 14 | No | Impaired | Allowed Secured Claim will be paid in full, with interest of 3.75% per annum, paid in monthly installments of $809.11 beginning on the first day of the first month following the Effective Date and continuing on pursuant to the terms of the agreement,[1] and such Holder shall retain its lien securing such Allowed Secured Claim. |
| 4 | *Secured Claim of:* Marlin Leasing Corporation<br><br>Collateral Description: 2021 Nissan Titan *6538 | No | Impaired | Allowed Secured Claim will be paid in full, without interest, paid in monthly installments of $625, beginning one year after the Effective Date and continuing on or |

---

[1] For the avoidance of doubt, the recovery and Claim Amount only includes the portion of SBA loan that is paid during the Plan as the underlying note obligation matures after the term of the Plan.

| Class# | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| | Asserted Secured Amount: $30,000.00<br><br>Proof of Claim No. 9 | | | before the 10th day of each month for four (4) years, and such Holder shall retain its lien securing such Allowed Secured Claim |
| 5 | *Secured Claim of:* Toyota Financial<br><br>Collateral Description: 2019 Toyota Tundra *5852<br><br>Asserted Secured Amount: $27,205.85 | No | Impaired | Allowed Secured Claim will be paid in full, without interest, paid in monthly installments of $566.79, beginning one year after the Effective Date and continuing on or before the 10th day of each month for four (4) years, and such Holder shall retain its lien securing such Allowed Secured Claim. |
| 6 | *Secured Claim of:* Toyota Financial<br><br>Collateral Description: 2018 Nissan Titan *6862<br><br>Asserted Secured Amount: $27,175.66 | No | Impaired | Allowed Secured Claim will be paid in full, without interest, paid in monthly installments of $566.16, beginning one year after the Effective Date and continuing or before the 10th day of each month for four (4) years, and such Holder shall retain its lien securing such Allowed Secured Claim. |

B.        **Classes of Priority Unsecured Claims.**

Certain priority Claims that are referred to in 11 U.S.C. § 507(a)(1), (4), (5), (6) and (7) are required to be placed in Classes. The Code requires that each holder of such a Claim receive cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a Class of Holders of such Claims may vote to accept different treatment.

The following chart lists all Classes containing Claims under 11 U.S.C. § 507(a)(1), (4), (5), (6) and (7) and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---------|-------------|------------|-----------|
| P-1 | Priority Wage Claims granted by *Final Order Granting Debtor's Emergency Motion for Authority to Pay Prepetition Wages, Compensation, and Employee Benefits pursuant to § 507(a)(4)* [Docket No. 69] | Unimpaired | Paid in full in cash on the Plan Effective Date in the amount of $24,524.92 or as otherwise agreed to by the parties. |

C.        **Classes of General Unsecured Claims**

General Unsecured Claims are not secured by property of the estate and not entitled to priority under 11 U.S.C. § 507(a). A table of all Claims, their estimated amounts, whether the claim is allowed or disputed, and their anticipated distribution under the Plan is attached hereto as **Exhibit B**.

(i)        Class C-1 General Unsecured Claims

The following chart identifies the Plan's proposed treatment of General Unsecured Classes, which contain General Unsecured Claims against the Debtor:

| Class# | Description | Impairment | Treatment |
|--------|-------------|------------|-----------|
| C-1 (General Unsecured Claims) | Holders of Allowed General Unsecured Claims that are not classified by this Plan including Claims held by vendors, trade creditors, Insiders who made loans to the Debtor prior to the | Impaired | Allowed General Unsecured Claims shall receive an annual pro rata distribution of the Debtor's projected net disposable income without |

| Class# | Description | Impairment | Treatment |
|--------|-------------|------------|-----------|
| | Petition Date, as well as any Claim for which a Proof of Claim was timely filed by an MCA Party regardless of the secured status asserted in such Proof of Claim. | | interest over the five (5) years following the Effective Date. Such payments shall begin within one (1) year of the Effective Date. |

### D.    Classes of Equity Interest Holders.

Equity Interest holders are parties who hold an ownership interest (*e.g.* equity interest) in the Debtor.  In a corporation, entities holding preferred or common stock are Equity Interest holders.  In a partnership, Equity Interest holders include both general and limited partners.  In a limited liability company, the Equity Interest holders are the members.  Finally, with respect to an individual who is a debtor, the Debtor is the Equity Interest Holder.

The following chart sets forth the Plan's proposed treatment of the Class of Equity Interests:

| Class # | Names & Description | Impairment | Treatment |
|---------|--------------------|-----------|-----------|
| 1 | PDC Holdco Inc., 25% shareholder | Unimpaired | Equity interests in the Debtor will be retained by PDC Holdco Inc. No payments will be made to PDC Holdco Inc. under the Plan on account of its Equity Interest. |
| 2 | Sundara Partners Fund I, LP, 75% shareholder | Unimpaired | Equity interests in the Debtor will be retained by Sundara Partners Fund I, LP. No payments will be made to Sundara Partners Fund I, LP under the Plan on account of its Equity Interest. |

**2.3**     <u>**Claims Allowance Process**</u>.

Any Claim detailed on the Debtor's schedules for which the Debtor did not mark as disputed, unliquidated, or contingent is deemed an Allowed Claim under this Plan, unless the Debtor objects to such Claim. For all other Claims, the Claimant must file a Proof of Claim by the Bar Date in order to receive a distribution under the Plan. The deadline for filing Proofs of Claim was April 4, 2025 (the "<u>Bar Date</u>"), and the deadline for filing Proofs of Claim by governmental entities is July 23, 2025 (the "<u>Governmental Bar Date</u>"). Late Claims will be automatically deemed disallowed.

The Debtor may object to the amount or validity of any Claim within sixty (60) days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the Holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan. Such deadline to object to any claim may be extended upon entry of an order of the Bankruptcy Court, upon notice and opportunity for a hearing.

No partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. The provisions of this section are not intended to restrict payment of any Allowed Claims that are not disputed. Until a Disputed Claim is resolved, payment distributions to claimants holding disputed Claims will be retained by the Disbursing Agent subject to a final resolution of the Disputed Claim. Upon resolution in favor of the Allowed Claims, the Disbursing Agent will distribute withheld funds within the next payment period. If the Disputed Claim is disallowed, the Disbursing Agent will make withheld funds available to Allowed Claim Holders within the next payment period in accordance with this Plan.

**2.4**     <u>**Treatment of Executory Contracts and Unexpired Leases**</u>.

The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date:

| Counterparty | Contract Description | Contract Date |
|---|---|---|
| Adobe | Adobe Subscriptions | January 19, 2025 |
| Aflac | Insurance | Ongoing |
| Aquilla Commercial | Contract for data cabling services | Ongoing |
| Austin Oaks | Contract for data cabling services | Ongoing |
| Azuga | Fleet GPS | March 5, 2025 |
| BCBS of Texas | Insurance | May 1, 2024 |

| Counterparty | Contract Description | Contract Date |
|---|---|---|
| Burton Construction | Contract for data cabling services | October 16, 2024 |
| Felix Media | Subcontractor for AV services | Ongoing |
| Harvey Cleary | Multiple contracts for data cabling services | April 9, 2025 |
| Hudson Excess Insurance Company | Insurance | May 23, 2025 |
| Jorns & Associates | Tax services | Ongoing |
| Jupiter Power | Contract for data cabling services | February 17, 2025 |
| Microsoft | Microsoft Software | December 20, 2024 |
| Neils Thompson Ltd. | Lease | September 30, 2022 |
| Novo Construction | Contract for data cabling services | January 4, 2024 |
| Nutrabullet | Contract for security cameras | January 3, 2025 |
| Pillsbury Winthrop Shaw Pittman LLP | Contract for data cabling services | December 19, 2025 |
| Pollutions Liability | Insurance | January 23, 2025 |
| Principal Insurance | Insurance | May 1, 2025 |
| PTS Wired | Contract for data cabling services | April 28, 2024 |
| RFE Communications | Material vendor | January 9, 2025 |
| Robinson Realty Services | Annual Network Support | January 1, 2025 |
| Spectrum | Telecommunications | October 2022 |
| STR Constructors | Contract for data cabling services/access control services | May 21, 2024 |
| Surency COBRA | Insurance | January 1, 2025 |

| Counterparty | Contract Description | Contract Date |
|---|---|---|
| Teacher Retirement Services | Maintenance agreement | Ongoing |
| Travelers | Installation floater policy | December 31, 2024 |
| Travelers Auto | Insurance | December 31, 2024 |
| Travelers Commercial Property | Insurance | December 31, 2024 |
| Travelers Umbrella | Insurance | December 31, 2024 |
| Travelers WC/GL | Insurance | December 31, 2024 |
| Verizon | Telecommunications | Ongoing |
| Waste Connections | Garbage/Recycling | October 21, 2024 |
| White Oak Apartments | Contract for data cabling services | April 25, 2024 |

Except for the above executory contracts and unexpired leases that have been assumed herein and included in any subsequently filed Plan or Plan Supplement, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Petition Date. The Debtor reserves all right to amend the above matrix of executory contracts and unexpired leases to include any executory contracts and unexpired leases that may have been inadvertently excluded during the one (1) year period following the Effective Date. In the event the Debtor amends the above matrix, the Debtor shall provide notice of such amendment.

A Proof of Claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the occurrence of the Effective Date.

Any claim based on the rejection of an executory contract or unexpired lease under this section will be barred if the Proof of Claim is not timely filed unless the Bankruptcy Court orders otherwise.

### 2.5    Means for Implementation of the Plan.

The Debtor intends to fund the Plan through the Debtor's continued operations (and potentially through additional exit financing provided by Sundara) and to make payments to Creditors from its projected net disposable income.

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the

Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

**2.6    Payments by Disbursing Agent.**

Regardless of whether the Debtor obtains confirmation of the Plan pursuant to Bankruptcy Code sections 1191(a) or (b), the Reorganized Debtor shall make all payments on Allowed Claims required under the Plan directly to the Creditors holding such Allowed Claims. Cause exists to allow the Debtor to serve as Disbursing Agent to make all Plan payments as this will reduce administrative costs and provide assurance that the Debtor is better able to monitor and maintain its cash flows, particularly due to the nature of the Debtor's business in the construction industry. The Debtor shall fund Plan Distributions with: (1) Cash on hand; (2) the proceeds of operations; and (3) exit financing from Sundara.

**2.7    Post-Confirmation Management.**

Subject to any other agreements, including those with Sundara, the Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
|---|---|---|
| Glenn Ryan Willis | President | $125,000/year |
| Riley Willis | Vice President of Operations | $62,400/year |
| Jordan Berger | Interim Chief Financial Officer | Compensation subject to the terms of the Post Petition Financing documents but not to exceed an aggregate total of $200,000/year for both Messers Berger and Taylor. |
| Austin Taylor | Interim Chief Operating Officer | |

**2.8    Tax Consequences of the Plan.**

Creditors and Equity Interest Holders concerned with how the Plan may affect their tax liability should consult with their own accountants, attorneys, and/or advisors.

Implementation of the Plan may result in federal income tax consequences to Holders of Claims, Equity Interest Holders, and the Reorganized Debtor. In this case, most of the Creditors will not be paid in full the amount of their Claims. Tax consequences to a particular Creditor or Equity Interest Holder may depend on the circumstances or facts regarding the Claim of the Creditor or the Interests of the Equity Interest Holder.

# ARTICLE III.  DISCHARGE

## 3.1     Discharge.

If the Plan is confirmed under 11 U.S.C. § 1191(a), on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in 11 U.S.C. § 1141(d) of the Bankruptcy Code; or

If the Plan is confirmed under 11 U.S.C. § 1191(b), as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, confirmation of the Plan shall effect a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## 3.2     Plan Injunction and Releases

Plan Injunction. Upon the Effective Date, all Holders of Claims, all Holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan. Additionally, all Holders of Claims, all Holders of Equity Interests, and all other parties in interest in the Bankruptcy Case shall be enjoined from seeking payment on their Claims or Interest except as otherwise provided in the Plan from the Reorganized Debtor.

Retention and Preservation of the Debtor's Rights and Causes of Action. Notwithstanding the confirmation of the Plan and the entry of the Confirmation Order, and notwithstanding any principle of res judicata or otherwise, and unless specifically and explicitly released, waived, compromised, or otherwise treated in this Plan, the Reorganized Debtor shall retain any and all rights, property, and interests of the Debtor and its Estate, regardless of whether they are scheduled, filed, or asserted prior to the Confirmation Hearing, including, without limitation, all: (i) defenses to Claims; (ii) affirmative defenses to Claims; (iii) setoffs and recoupments against any Claim, Creditor, or other person; (iv) rights to turnover, accounting, contribution, indemnification, or reimbursement against any Creditor or other person; (v) rights under any loan document modified by this Plan, but only as so modified; (vi) rights to any tax refund belonging to the Debtor; and (vii) claims and Causes of Action against any Creditor or Person whatsoever, including for affirmative relief and to reduce any liability. Moreover, the Reorganized Debtor specifically reserves and retains any and all causes of action belonging to the Debtor, which shall in no way be extinguished, released, or prejudiced as a result of the confirmation of this Plan.

Estate Release of Certain Claims: Except as specifically provided for herein, on and after the Effective Date, and without the need for further action, the Plan and Confirmation Order shall constitute a release and discharge of all actions, causes of action, claims, suits, debts, damages,

17

judgments, liabilities, and demands whatsoever, whether matured or unmatured, whether at law or in equity, whether before a local, state, or federal court, state or federal administrative agency or commission, regardless of location and whether now known or unknown, liquidated or unliquidated, that the Debtor or the Estate may have or be able to assert against (i) Jackson Walker LLP, its attorneys, employees, officers, agents, and shareholders; and (ii) any director, officer, manager, or fiduciary of the Debtor, in each case solely for any actions or inactions taken by any of the foregoing in, or arising against the foregoing as a result of, the Bankruptcy Case or the Plan, including with respect to the negotiation, execution, and delivery of any document or instrument in connection with the Plan; provided, however, that nothing in this Plan releases any claim against any of the foregoing for gross negligence or intentional acts. The foregoing does not affect, prejudice, or release any claim or cause of action that any Person may have against any of the foregoing that is personal to such Person and is not a claim of the Estate. Nothing in this Plan, and nothing in the foregoing, waives any objection or other issue related to any Professional Claim.

## ARTICLE IV.  GENERAL PROVISIONS

☐      If this box is checked, the Plan contains nonstandard provisions in Article 6.

### 4.1    Vesting of Property of the Estate.

If a plan is confirmed under 11 U.S.C. § 1191(b), property of the Estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in 11 U.S.C. § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

### 4.2    Binding Effect.

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors whether or not they accept the Plan.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

### 4.3    Severability.

If any provision of this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 4.4    Retention of Jurisdiction by the Bankruptcy Court.

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:

(i)      To make such as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan;

18

(ii)     To rule on any modification of the Plan proposed under 11 U.S.C. § 1193;

(iii)    To hear and allow all applications for compensation to professionals and other Administrative Expenses and enter final orders;

(iv)     To resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and

(v)      To adjudicate any cause of action, including retained causes of action, which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**4.5    Captions.**

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## ARTICLE V.  DEFINITIONS

**5.1**    The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan and they are supplemental by the following definitions:

**A.**    "Administrative Expense" or "Administrative Claim" means any cost or expense of the administration of the Chapter 11 Cases incurred on or before the Plan Effective Date entitled to priority under § 507(a)(2) and Allowed under § 503(b) of the Bankruptcy Code, and all fees and charges assessed against the Estates pursuant to 28 U.S.C. § 1930.

**B.**    "Allowed," as it relates to any type of Claim provided for under this Plan, means a Claim:

(i)     which has been scheduled as undisputed, noncontingent, and liquidated in the Schedules in an amount other than zero or unknown, and as to which:

a. no Proof of Claim has been timely filed; and

b. no objection has been timely filed (as determined by applicable deadlines contained in this Plan, including the claims objection deadline);

(ii)    as to which a Proof of Claim has been timely filed and either:

a. no objection thereto has been timely filed (as determined by applicable deadlines contained in this Plan, including the claims objection deadline); or

19

                    b. such Claim has been allowed (but only to the extent allowed) by a Final Order of the Bankruptcy Court;

(iii)    (iii) which has been expressly allowed under the provisions of this Plan; or

(iv)    (iv) which has been expressly allowed by Final Order of the Bankruptcy Court.

**C.**    "Bar Date" means the final date for the filing of Proofs of Claims set by the Bankruptcy Court or such other date as may apply to a particular Claim pursuant to a duly entered order of the Bankruptcy Court, which may be the Confirmation Order.

**D.**    "Claim" shall have the meaning set out in § 101 of the Bankruptcy Code.

**E.**    "Claimant" or "Creditor" means the Holder of a Claim.

**F.**    "Class" means a group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

**G.**    "Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**H.**    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to § 1129 of the Bankruptcy Code.

**I.**    "Debtor" means Premier Datacom, Inc.

**J.**    "Disallowed" means, with reference to a Claim or Interest, any Claim or Interest, or any portion thereof, that (i) has been Disallowed by a Final Order; (ii) is (x) not Scheduled or is Scheduled as zero or as contingent, disputed or unliquidated, and (y) as to which no Proof of Claim or Proof of Interest has been timely filed or deemed timely filed by the Bankruptcy Court; (iii) has been withdrawn by agreement of the Debtor and the Holder thereof; of (iv) has been withdrawn by the Holder thereof.

**K.**    "Disbursing Agent" means, Premier Datacom, Inc. or the Reorganized Debtor.

**L.**    "Disputed" when used with respect to a Claim, means a Claim against the Debtor (i) that is listed in the Debtor Schedules as disputed, contingent or unliquidated regardless of whether a Proof of Claim has been filed or not; (ii) that is listed in the Debtor Schedules as undisputed, liquidated and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is not listed in the Debtor Schedules, but as to which a Proof of Claim has been filed with the Bankruptcy Court; or (iv) as to which an objection has been or may be filed. Notwithstanding the foregoing, only Claims to which an Objection has been filed shall be deemed Disputed Claims with respect to Claims for which a Proof of Claim has been filed.

**M.** "Effective Date" means a business day as soon as practicable after the Confirmation Date, as specified by the Debtor.

**N.** "Estate" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Cases.

**O.** "Final Order" means an order or judgment by the Bankruptcy Court which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for new trial, reargument or rehearing has expired and to which no appeal, petition for certiorari or other proceedings for a trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, re-argument or rehearing shall have expired.

**P.** "General Unsecured Claim" means any Claim against the Debtor that is not a Priority Tax Claim, Priority Non-Tax Claim, Secured Claim or Administrative Claim, and includes any Claim for which a Proof of Claim was timely filed by an MCA Party regardless of the secured status asserted in such Proof of Claim.

**Q.** "Governmental Unit Bar Date" means July 23, 2025, which is the Bar Date established by which governmental units were required to file Proofs of Claim.

**R.** "Holder" means the beneficial owner of any Claim, Administrative Expense, Equity Interest or other interest or right.

**S.** "Impaired" has the meaning ascribed to such term in section 1124 of the Bankruptcy Code.

**T.** "Insider" means an insider as defined in section 101(31) of the Bankruptcy Code.

**U.** "MCA Party," refers to each of Alpha Capital Solutions, Arsenal Funding, BizFund LLC, BMT Capital, DashAdvance, ED ON Capital, Lion Business Funding, QFS Capital, Slim Business Funding, Spartan and any other party that entered into a similar "merchant cash advance" agreement with the Debtor.

**V.** "Petition Date" means January 24, 2025

**W.** "Plan" means this Subchapter V Plan, either in its present form or as it may hereafter be altered, amended or modified from time to time

**X.** "Priority Tax Claim" means any Claim of a governmental unit of the kind specified in §§ 502(i) or 507(a)(8) of the Bankruptcy Code.

**Y.**     "Proof of Claim" means a Proof of Claim or filed in the Bankruptcy Cases pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents

**Z.**     "Scheduled," with respect to any Claim, means listed on the Schedules.

**AA.**     "Schedules" means the Schedules of Assets and Liabilities and the Statements of Financial Affairs filed by the Debtor as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such Schedules and Statements have been or may be supplemented or amended.

**BB.**     "Secured Claim" means a Claim secured by a lien or right of setoff allowable under 11 U.S.C. § 553 on property of the Debtor, which Lien is valid, perfected and enforceable under applicable law, is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law and which is duly established in the Chapter 11 cases, but only to the extent of the value of the collateral that secures payment of such Claim.

**CC.**     "Sundara" means Sundara Partners Fund, I, LP, as holder of seventy-five percent 75% of the equity interest in the Debtor.

**DD.**     "Sundara DDTL DIP Loan" means that certain financing approved by the Court via its *Final Order (I) Authorizing the Debtor to Obtain Post-Petition Financing on a Final Basis and (II) Granting Related Relief* [Docket No. 167]

**EE.**     "U.S. Trustee" means the Office of the United States Trustee for the Western District of Texas.

## ARTICLE VI.  <u>NONSTANDARD PROVISIONS</u>

6.1     The following nonstandard provisions shall be applicable to the Plan:

**A.**     <u>Default</u>.

In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the Disbursing Agent to make a payment to a Holder of an Allowed Claim pursuant to the terms of this Plan shall be an event of default as to such payments, if the payment not cured within thirty (30) days after receipt by the Reorganized Debtor of such written notice of default from such Creditor.

An act or omission by any Creditor or Holder of an Allowed Claim in contravention of a provision within this Plan shall be deemed an event of default under this Plan.  Upon an event of default, the Reorganized Debtor may seek to hold the defaulting party in contempt of the Confirmation Order.  If such party is found to be in default under the Plan, such party shall pay the reasonable attorneys' fees and costs of the Debtor or Reorganized Debtor in pursuing such matter. Furthermore, upon the finding of such a default by such party, the Bankruptcy Court may (a) designate a party to appear, sign and/or accept the documents required under the Plan on behalf of the defaulting party, in accordance with Rule 70 of the Federal Rules of Civil Procedure, (b) may enforce the Plan by order of specific

performance, (c) may award judgment against such party in favor of the Reorganized Debtor in an amount, including interest, to compensate the Reorganized Debtor for the damages caused by such default; and (d) make such other order as may be equitable that does not materially alter the terms of the Plan as confirmed.

Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

Mr. Glenn Ryan Willis,
c/o Premier DataCom Incorporated,
9411 Neils Thompson Drive
Austin, TX 78758

With a copy to:

Jennifer F. Wertz
Beau H. Butler
c/o Jackson Walker LLP
100 Congress Avenue, Suite 1100
Austin, TX 78701
jwertz@jw.com
bbutler@jw.com

Respectfully submitted,
/s/ *Glenn Ryan Willis*
Glenn Ryan Willis, President
Premier Datacom, Inc.

/s/ *Jennifer F. Wertz*
**JACKSON WALKER LLP**
Jennifer F. Wertz (TX Bar No. 24072822)
Victoria N. Argeroplos (TX Bar No. 24085340)
William T. Farmer (TX Bar No. 24127156)
Beau H. Butler (TX Bar No. 24132535)
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone:     (512) 236-2000
Facsimile:     (512) 236-2002
Email: jwertz@jw.com
Email: vargeroplos@jw.com
Email: wfarmer@jw.com
Email: bbutler@jw.com

*Counsel to the Debtor and Debtor in Possession*

23

**Exhibit A**
**Liquidation Analysis**

**Premier Datacom LLC (Case # 25-10097)**
Net Disposable Income and Liquidation Analysis

| Plan Period | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
|---|---|---|---|---|---|
| Period Ending | 8/31/2026 | 8/31/2027 | 8/31/2028 | 8/31/2029 | 8/31/2030 |

| Income Statement | | | | | |
|---|---|---|---|---|---|
| **Revenue** | **5,090,645** | **6,429,037** | **6,812,929** | **6,897,195** | **7,114,037** |
| **Cost of Goods Sold** | | | | | |
| Direct Labor Salary | 905,004 | 1,142,940 | 1,211,187 | 1,226,168 | 1,264,718 |
| Material Costs | 1,566,352 | 1,978,165 | 2,096,286 | 2,122,214 | 2,188,934 |
| Subcontractor Costs | 783,176 | 989,083 | 1,048,143 | 1,061,107 | 1,094,467 |
| Cost of Goods Sold | 3,254,532 | 4,110,188 | 4,355,616 | 4,409,489 | 4,548,119 |
| **Gross Profit** | **1,836,113** | **2,318,849** | **2,457,313** | **2,487,706** | **2,565,918** |
| **Operating Expenses** | | | | | |
| Management Salary & Benefits | 402,400 | 410,520 | 468,796 | 508,486 | 523,910 |
| Office Staff Salary & Benefits | 429,040 | 450,492 | 473,016 | 621,667 | 652,751 |
| Payroll Taxes | 138,916 | 160,316 | 172,240 | 188,506 | 195,310 |
| Insurance | 228,907 | 251,798 | 264,388 | 277,607 | 291,487 |
| Rent & Facilities | 119,892 | 131,881 | 138,475 | 145,399 | 152,669 |
| Professional Fees | 30,000 | 33,000 | 34,650 | 36,383 | 38,202 |
| Fleet Expense (Fuel, Repairs & Misc.) | 87,600 | 96,360 | 101,178 | 106,237 | 111,549 |
| Sales Tax | 152,719 | 192,871 | 204,388 | 206,916 | 213,421 |
| Utilities, Dues & Other Office Expenses | 125,653 | 138,218 | 145,129 | 152,386 | 160,005 |
| Operating Expenses | 1,715,127 | 1,865,456 | 2,002,260 | 2,243,586 | 2,339,304 |
| **EBITDA** | **120,986** | **453,393** | **455,052** | **244,121** | **226,614** |
| **Other Cash Uses** | | | | | |
| Interest Expense (Ordinary Course) | 37,799 | 29,650 | 29,495 | 29,334 | 29,167 |
| Tax Distributions | 29,258 | 148,310 | 148,945 | 75,175 | 69,106 |
| **Operating Cashflow Before Plan Payments** | **53,929** | **275,433** | **276,612** | **139,611** | **128,340** |

| Proposed Plan Payments and Exit Financing | # | | | | | | Recovery $ | Claim $ | Recovery % |
|---|---|---|---|---|---|---|---|---|---|
| **Proposed Plan Payments** | | | | | | | | | |
| Secured Claims | | | | | | | | | |
| U.S. Small Business Administration (POC #14) | [1] | 3,910 | 4,060 | 4,214 | 4,375 | 4,542 | 21,102 | 21,102 | 100% |
| BayFirst/First Home (POC #17) | | - | 30,540 | 30,540 | 30,540 | 30,540 | 122,162 | 105,258 | 116% |
| Five Star Bank (POC #15) | | - | 62,353 | 62,353 | 62,353 | 62,353 | 249,412 | 208,803 | 119% |
| Marlin Leasing Corporation (POC #9) | | - | 7,500 | 7,500 | 7,500 | 7,500 | 30,000 | 30,000 | 100% |
| Toyota Financial (*5852) | | - | 6,801 | 6,801 | 6,801 | 6,801 | 27,206 | 27,206 | 100% |
| Toyota Financial (*6862) | | - | 6,794 | 6,794 | 6,794 | 6,794 | 27,176 | 27,176 | 100% |
| Secured Claims | | 3,910 | 118,048 | 118,203 | 118,364 | 118,531 | 477,056 | 419,545 | 114% |
| Administrative Claims | | - | 355,190 | 155,190 | - | - | 510,379 | 510,379 | 100% |
| Priority Tax & Unsecured Claims | | 48,071 | - | - | - | - | 48,071 | 48,071 | 100% |
| Plan Payments to Secured, Admin & Priority Claims | | 51,982 | 473,238 | 273,393 | 118,364 | 118,531 | | | |
| **Exit Financing** | | | | | | | | | |
| Refinance DDTL DIP Loan to Exit Facility | [2] | - | 200,000 | - | - | - | | | |
| Total Exit Financing | | - | 200,000 | - | - | - | | | |
| **Projected Net Disposable Income** | | 1,947 | 2,195 | 3,220 | 21,247 | 9,810 | | | |
| **Plan Payments to General Unsecured Claims** | [3] | 1,947 | 2,195 | 3,220 | 21,247 | 9,810 | 38,419 | 1,413,938 | 2.7% |

| Liquidation Analysis | Book Value | Liquidation Recovery % | | | Liquidation Recovery $ | | |
|---|---|---|---|---|---|---|---|
| Scenario | Current | Low | High | | Low | High | Average |
| Cash & Equivalents | 102,459 | 100% | 100% | | 102,459 | 102,459 | 102,459 |
| Accounts Receivable (< 90 Days Aged) | 321,081 | 50% | 75% | | 160,541 | 240,811 | 200,676 |
| Inventory | 157,256 | 10% | 20% | | 15,726 | 31,451 | 23,588 |
| Prepaid Expenses | 9,020 | - | - | | - | - | - |
| Furniture & Fixtures | 98,000 | 5% | 10% | | 4,900 | 9,800 | 7,350 |
| Vehicles | 167,374 | 20% | 30% | | 33,475 | 50,212 | 41,844 |
| **Estimated Recovery by Chapter 7 Trustee** | **855,190** | **37%** | **51%** | | **317,100** | **434,734** | **375,917** |
| **Payments to Secured Creditors, Administrative Expenses, Priority Claims** | | | | | | | |
| Chapter 7 Trustee Commission (11 U.S.C. § 326(a)) | | | | | 22,046 | 22,046 | 22,046 |
| Chapter 7 Administrative Expenses (Incl. clerk's fees, auctioneer, storage, insurance, etc.) | | | | | 75,000 | 75,000 | 75,000 |
| Chapter 11 Professional Fee Administrative Expenses | | | | | 220,054 | 250,000 | 250,000 |
| Sundara DDTL DIP Loan | [4] | | | | - | 87,688 | 28,871 |
| **Recovery to All Other Classes of Claims** | [5] | | | | **-** | **-** | **-** |

*[1] Assumes PDC assumes US SBA loan ($156,418.66; matures 5/31/2050). Recovery and Claim amounts only include portion of SBA loan that is paid during the Plan.*
*[2] Based on preliminary conversations with bank lenders, assumes PDC will be eligible for traditional bank financing after 1-1.5 years to refinance Sundara DIP Loan.*
*[3] Recovery % is subject to change based on final allowed General Unsecured Claims.*
*[4] Liquidation scenario implies ~88% deficiency to administrative DDTL DIP loan; all liquidation classes of creditors receive 0% recovery.*
*[5] Confirmation of the Plan is in the best interests of the creditors. Under a liquidation, unsecured creditors are estimated to receive 0% of their claims. However, under the Plan, unsecured creditors are estimated to receive approximately 3% of their allowed claims*
*[6] Plan Treatment by Creditor Class: Secured Claims: Payments begin 1 year after Plan Effective Date, complete by end of Year 5, Administrative Claims: Payments begin 1 year after Plan Effective Date, complete by end of Year 3, Priority Unsecured Claims: Payment in full occurs 1 month after Plan Effective Date, Allowed General Unsecured Claims: Payments begin 2 years after Plan Effective Date, complete by end of Year 5*

**<u>Exhibit B</u>**

**Table of Claims**

| Class C-1 – General Unsecured Claims | | | |
|---|---|---|---|
| **Claimant** | **Estimated Amount** | **Allowed/ Disputed** | **Anticipated Distribution** |
| AccuTech | $49,822.21 | Allowed | 3% |
| American Express | $21,729.37 | * | * |
| American Express/Amazon | $24,644.99 | * | * |
| American Express/Platinum | $10,345.61 | * | * |
| Bank of America | $11,652.83 | Disputed | 0% |
| Blue Cross Blue Shield | $6,563.96 | Allowed | 3% |
| BMT Capital Group Inc. | $475,000.00 | * | * |
| Cellco Partnership d/b/a Verizon Wireless | $5,428.26 | * | * |
| Charles Brooks | $208,133.72 | Allowed | 3% |
| CSC – Communications Supply Corp. | $32,000.00 | * | * |
| Felix Media | $40,495.93 | * | * |
| Glen Ryan Willis | $103,157.37 | Allowed | 3% |
| Home Depot Credit Services | $5,165.55 | Allowed | 3% |
| ICS – Integrated Cable Systems | $28,473.62 | Allowed | 3% |
| Internal Revenue Service | $4,642.43 | * | * |
| Jess Rest | $33,075.00 | * | * |
| On Deck | $58,810.02 | Disputed | 3% |
| Paylocity | $1,166.53 | Allowed | 3% |
| Plexe | $27,549.65 | Disputed | 0% |
| PNC- Alpha Captial | $136,963.56 | * | * |
| Premier Data Solutions | $579,350.00 | Disputed | 0% |
| Prosperum Capital Partners | $111,110.90 | * | * |
| Rexel USA Inc. | $184,117.27 | Disputed | 0% |
| RFE Communications | $2,500.00 | Allowed | 3% |
| SBFS Rapid Finance | $56,650.00 | Disputed | 0% |
| Surancy Cobra | $100.00 | Allowed | 3% |
| Texas Comptroller of Public Accounts | $9,367.68 | * | * |
| Texas Comptroller of Public Accounts (#2) | $40,648.68 | Disputed | 0% |
| Travis County | $10,536.46 | * | * |
| U.S. Bank | $8,791.56 | * | * |
| WEX Exxon Mobil | $3,905.49 | Disputed | 3% |

Pursuant to section 2.3 of the Debtor's Proposed Amended Plan, the deadline for objecting to claims is set for sixty (60) days after Plan Confirmation. The Debtor is in the process of analyzing the Proofs of Claim before making a determination as to filing an objection to each claim.